The Vita-Food Corporation v. Commissioner.
Vita-Food Corp. v. Commissioner
Docket No. 45842.
United States Tax Court
T.C. Memo 1956-249; 1956 Tax Ct. Memo LEXIS 43; 15 T.C.M. (CCH) 1274; T.C.M. (RIA) 56249; November 13, 1956
*43 George T. Altman, Esq., 233 South Beverly Drive, Beverly Hills, Calif., for the petitioner. James P. Powers, Esq., for the respondent. WITHEY
Memorandum Opinion WITHEY, Judge: Our Memorandum Findings of Fact and Opinion in this proceeding was filed on October 8, 1954 [; . Certain of our holdings therein were appealed by petitioner to the United States Court of Appeals for the Ninth Circuit. The proceeding is now before us under mandate from that court for further consideration of the appealed holdings in accordance with the opinion of that court (C.A. 9, August 7, 1956). The questions presented for determination under the mandate are: (1) the amounts properly deductible by petitioner for the fiscal years ended October 31, 1942 and October 31, 1943 as compensation of Maxwell H. Lewis, an officer of the petitioner, (2) the amount properly allowable as the basis of property disposed of by petitioner in the fiscal year ended October 31, 1943, and (3) whether $75,000 of an amount of $200,000 received by petitioner under a contract entered into during the fiscal year 1943 was received for the cancellation of a contract. *44 [Findings of Fact] Although the Court of Appeals stated in its opinion that it did not attempt to determine the amounts constituting reasonable compensation of Lewis for the services he rendered to the petitioner during the fiscal years 1942 and 1943, we think other statements made by it with respect to Lewis and the importance of his services to the business of the petitioner during those years indicate that the court was of the opinion that the full amounts of the deductions taken by the petitioner for those years as Lewis' compensation should be allowed. Accordingly, we find that reasonable compensation for the services rendered to the petitioner by Lewis was $42,511.03 and $39,783.03 for the fiscal years 1942 and 1943, respectively, and hold that those amounts were proper deductions for the respective years. The next question for determination is the basis of the property ("The Stuart Formula" trade-mark or trade name and the good will attaching thereto) disposed of by petitioner during the fiscal year 1943. When the proceeding formerly was before us the petitioner contended that the correct basis of the property was $78,340.95 Respecting the basis of the property and *45 the petitioner's contention relative thereto the Court of Appeals stated as follows in its opinion: "Any findings which support disallowance of a substantial portion of this claim of $78,340.95 are clearly erroneous." In view of that and other statements made by the Court of Appeals, we find that the basis of the property in question was $78,340.95. As the result of an agreement entered into on May 5, 1941 by petitioner, The Stuart Company and others, The Stuart Company acquired what approximated the exclusive right to sell and distribute the products manufactured by petitioner. Controversy developed between Lewis and the petitioner on the one hand and The Stuart Company and Arthur Hanisch, its principal stockholder, on the other hand. The petitioner instituted legal proceedings against The Stuart Company, Hanisch and others. During the pendency of the proceedings the controversy and litigation were settled by an agreement entered into on November 28, 1942 by petitioner, The Stuart Company, and Hanisch wherein (1) petitioner agreed to dismiss the pending proceedings with prejudice, (2) the agreement of May 5, 1941 was thereby "cancelled and terminated as fully and to the same extent *46 as though the same had never been executed" and all parties released their claims and demands thereunder. (3) the petitioner quitclaimed to The Stuart Company "The Stuart Formula" trade-mark, (4) The Stuart Company agreed to pay petitioner, in addition to $2,300 theretofore paid to petitioner, an amount of $197,700 payable $35,000 cash upon execution of the agreement, $40,000 represented by notes payable at the rate of $4,000 per month, and the remainder of $122,700 payable at the rate of 7 1/2 cents per unit of vitamin concentrates as sold and marketed by The Stuart Company beginning October 1, 1943, (5) the parties agreed that in the event The Stuart Company abandoned "The Stuart Formula" trade-mark, or became bankrupt or insolvent, the trade-mark and/or registrations thereof should vest in and become the property of the petitioner, and (6) the petitioner assigned to Hanisch certain shares of stock in The Stuart Company and in Shaler Food Products Company, a company which had been merged in The Stuart Company. In connection with the transactions effected by the agreement of November 28, 1942, the petitioner reported in its income tax return for the fiscal year 1943 the sale for *47 $200,000 of "Formula & Trade Mark," the gain computed being shown as long-term capital gain. The respondent determined that $75,000 of the total consideration of $200,000 flowing to the petitioner under the agreement of November 28, 1942, was consideration received by petitioner for the cancellation of the agreement of May 5, 1941, and constituted ordinary income and that the remaining $125,000 represented receipts from the sale of "The Stuart Formula" trade-mark. Being unable to find from the record that $75,000 of the $200,000 was not paid to the petitioner for the cancellation of the contract of May 5, 1941, under which The Stuart Company was sustaining substantial losses and under which the petitioner was making large profits, we sustained the respondent's determination. In its opinion the Court of Appeals stated that the question before it with respect to the foregoing matter was as follows: "Was $75,000.00 out of the total of $200,000.00 received by Vita-Food from The Stuart Company under a settlement agreement entered into November 28, 1942, a capital gain because received for the good will and trademark sold under the agreement to The Stuart Company or ordinary income paid *48 to Vita-Food for cancellation of the distributorship contract between these corporations?" Respecting the controversies and the legal proceedings and the settlement thereof by the agreement entered into on November 28, 1942, the opinion of the Court of Appeals contains the following: "A conflict between Hanisch and Lewis arose later when Hanisch wished a stock interest in Vita-Food, and Lewis refused. There was litigation between the corporations over the contract and the attempted cancellation thereof. As a result, all was resolved by a sale by Vita-Food to The Stuart Company of its trademark 'The Stuart Formula' and the good will connected with the business for $200,000.00." Further respecting the matter the Court of Appeals said: "Likewise, the determination that $75,000.00 should be considered as ordinary income and not as capital assets is apparently based upon the idea that there was a release from a burdensome contract. This may have been true so far as The Stuart Company was concerned, but Vita-Food simply sold certain articles and good will. The fact that there was a contract was not burdensome to it. In fact, the Tax Court has pointed out that it has made no profits *49 since the time of the sale and cancellation. This question should be reexamined in the light of the holding. In its present form, so far as it involves a question of fact, the holding was clearly erroneous." [Opinion] We have set out above all of the statements made by the Court of Appeals respecting the question involved in this issue, which grew out of the agreement of November 28, 1942. We have carefully considered the court's statements in connection with the respondent's determination and also in connection with the evidence of record bearing on the issue and our affirmance of the respondent's determination on the ground that the petitioner had failed to show that $75,000 of the $200,000 consideration paid by The Stuart Company was not for the cancellation of the agreement of May 5, 1941 and was not ordinary income. After having so considered those matters we are not entirely clear as to the import of the statements of the court, particularly those contained in the last of the above quotations. In the last of those quotations we are told that "This question [presumably the question which the court considered to be before it and previously stated by it as follows: 'Was *50 $75,000.00 out of the total of $200,000.00 received by Vita-Food from The Stuart Company under a settlement agreement entered into November 28, 1942, a capital gain because received for the good will and trade mark sold under the agreement to The Stuart Company or ordinary income paid to Vita-Food for cancellation of the distributorship contract between these corporations?'] should be reexamined in the light of the holding. In its present form, so far as it involves a question of fact, the holding was clearly erroneous." Unless the court was referring to different "holdings" in the foregoing consecutive sentences then it is not apparent what "holding" the question is to be reexamined in the light of. Considering the statements of the court as a whole we are of the opinion that the lastmentioned "holding," which the court states "was clearly erroneous" "so far as it involves a question of fact," refers to the respondent's determination, and that the "holding" "in the light of" which "This question should be reexamined" refers to the court's statement that "Vita-Food simply sold certain articles and good will" and to an earlier statement of the court that the conflict between Hanisch *51 and Lewis and the litigation between petitioner and The Stuart Company were "resolved by a sale by Vita-Food to The Stuart Company of its trade mark 'The Stuart Formula' and the good will connected with the business for $200,000." In such a view of the matter the only conclusion that can be reached upon a reexamination of the issue in the light of the statements of the court is that $75,000 of the $200,000 paid by The Stuart Company to petitioner was not paid for the cancellation of the agreement of May 5, 1941 but that the entire $200,000 was paid for capital assets sold by petitioner to The Stuart Company. Accordingly, we hold that the respondent erred in determining that petitioner received ordinary income in the amount of $75,000 for the cancellation of the contract of May 5, 1941. In holding as we have above we have done so only because of what appears to us to be the direction of the Court of Appeals under its mandate herein. In connection with our holding above we make the following observations: that in the case of , which also involved the agreement of November 28, 1942 involved herein, we held that $75,000 of *52 the amount paid under that agreement was paid to the petitioner by The Stuart Company for the cancellation of the agreement of May 5, 1941, that such holding was affirmed at by the same Court of Appeals under whose mandate we are here acting, that citation of that affirmance was made in our prior report herein, and that no mention is made by the Court of Appeals in its opinion herein of our or its action in the case of The Stuart Company. Decision will be entered under Rule 50.